UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELVIN GARCIA,

            Plaintiff,

-v-

BILL ME LATER, INC. and PAYPAL, INC.

            Defendants.

No. 13-cv-8701 (RJS)
OPINION AND ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-24-15

RICHARD J. SULLIVAN, District Judge:

    Plaintiff Melvin Garcia, proceeding *pro se*, brings this action against Bill Me Later, Inc. ("BML") and PayPal, Inc. ("PayPal") (together, "Defendants"), asserting violations of 42 U.S.C. §§ 1981 and 1982, "conspiracy with racial animus," abuse of process, intentional infliction of emotional distress, fraudulent concealment, and negligence. Now before the Court is Defendants' unopposed motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion is granted in its entirety.

I. BACKGROUND[1]

A. Facts

    In the early months of 2012, Plaintiff entered into a contract with PayPal whereby Plaintiff "made certain online purchases . . . and . . . *Pay Pal, Inc* would send those items" to Plaintiff. (Compl. ¶ 6.) Stating that he was unaware of the "association, if any" between PayPal

---

[1] The facts referred herein are taken from the allegations in the Complaint ("Compl."), which are accepted as true for the purposes of deciding the instant motion. In deciding Defendants' motion, the Court has also considered Defendants' memorandum of law in support thereof ("Def. Mem.").

and BML, Plaintiff claims that he did not have a contract with BML.[2] (*Id.* ¶ 13.) Plaintiff alleges that BML sent him numerous bills and called him multiple times. In doing so, Plaintiff claims that BML "interfere[d] with an active contract" between him and PayPal, and that "but for his race these fake bills and other abuses wouldn't have occur[red]." (*Id.* ¶¶ 8, 21.) He further asserts that Defendants' actions are "an example of one of the Nation's vicious credit schemes and scams generated by firms under that same old '*Jim Crow*'-like discriminatory policy and practices." (*Id.* ¶ 3.) Plaintiff alleges that as a result of this "scheme" he "became financially broke" and his "perfect credit score" was "destroyed." (*Id.* ¶¶ 1, 8.)

B. Procedural History

Plaintiff filed the Complaint on December 3, 2013. (Doc. No. 2.) On July 22, 2014, after being served, Defendants filed a pre-motion letter requesting leave to file a motion to dismiss. (Doc. No. 9.) Notwithstanding the Court's individual practices, which require the non-moving party to submit a three-page response within three business days of receiving a pre-motion letter, Plaintiff did not submit a response to the pre-motion letter or otherwise request additional time in which to respond. With the Court's permission, Defendants thereafter filed the instant motion to dismiss on September 12, 2014. (Doc. Nos. 13–16.) On September 15, 2014, the Court issued an Order directing Plaintiff to respond by October 15, 2014. (Doc. No. 17.) Plaintiff did not file a response, and has had no communication with the Court since filing the Complaint.

---

[2] By way of background, the Court takes judicial notice of the fact that PayPal operates an online payments platform whereby individuals and businesses may quickly and securely send and receive payments, and that BML is a payment method available on and affiliated with PayPal. *See Magnoni v. Smith & Laquercia*, 483 F. App'x 613, 616 (2d Cir. 2012) (holding that it was appropriate for the district court to take judicial notice, *sua sponte*, of the fact that a brand of wheelchair exists since it is not a fact that is subject to reasonable dispute and can accurately and readily be confirmed by accessing the corporate website). Specifically, when sending a payment via PayPal, a user must designate a payment method among three options: transferring funds directly from a bank account, using a credit card, or selecting to be billed by BML. (Def. Mem. Ex. A.) If a user selects the BML option, he or she is informed that BML is "a PayPal service" that functions as "an open-ended credit plan" offered by a third-party financial institution. (Def. Mem. Ex. A.) Although Plaintiff does not specify the payment method he chose for the payments he sent, his PayPal billing records indicate that PayPal billed him through BML. (Def. Mem. Ex. B.) As a result of Plaintiff's purchases, the balance on Plaintiff's PayPal account in October 2013 was approximately $1000. (Def. Mem. Ex. B.) Subsequently, BML called and sent bills to Plaintiff for his outstanding balance, but Plaintiff has not paid any of these bills. (Compl. ¶ 8; Def. Mem. Ex. B.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. Accordingly, although the court must construe a complaint liberally where the plaintiff is *pro se*, the complaint must still contain factual allegations that raise a "right to relief above the speculative level" in order to survive a motion to dismiss. *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). When a plaintiff has not opposed a motion to dismiss, his failure to do so does not itself justify the dismissal of the complaint. *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007). Rather, the court must still determine the legal sufficiency of the complaint based on its own reading. *Id.*

## III. DISCUSSION

As noted above, Plaintiff brings claims under 42 U.S.C. §§ 1981 and 1982, as well as a claim for "conspiracy with racial animus" and New York state-law claims for abuse of process,

intentional infliction of emotional distress, fraudulent concealment, and negligence. (Comp. ¶¶ 23–101.) Plaintiff seeks $3 million in compensatory damages and $3 million in punitive damages. (*Id.* ¶¶ 32, 38, 45, 57, 63, 101.) Defendants argue that the Complaint must be dismissed because it fails to state a claim upon which relief can be granted. The Court addresses each of Plaintiff's claims in turn.

### A. Claims Pursuant to 42 U.S.C. §§ 1981 and 1982

Plaintiff first alleges violations of Sections 1981 and 1982 of Title 42 of the United States Code. Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. § 1981(a)). Similarly, Section 1982 prohibits racial discrimination with respect to "the right 'to inherit, purchase, lease, sell, hold, and convey real and personal property.'" *Sullivan v. Little Huntington Park, Inc.*, 396 U.S. 229, 236 (1969) (quoting 42 U.S.C. § 1982). "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087–88 (2d Cir. 1993). Section 1982 claims are evaluated under the same standard. *See Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 699–700 (S.D.N.Y. 1996) ("[I]t is a well[-]established principle that due to the related origins and language of the two sections, they are generally construed in pari materia." (citation and internal quotation marks omitted)); *see also Griffin v. Santander Bank*, No. 12-cv-1249 (SJF), 2014 WL 204229, at *5 (E.D.N.Y. Jan. 16, 2014) (using the same standard for claims under Sections 1981 and 1982).

Plaintiff is Hispanic and alleges that, "due to intentional racial discrimination by the defendants here, [P]laintiff['s] right to make and enforce contract[s], and property rights concerning [P]laintiff's perfect credit score[, were] denied and deprived." (Compl. ¶ 60.) Plaintiff also claims "[t]hat in New York City and among the defendants hereto there is an unwritten policy and practice called the *'Jim Crow laws'* whereby persons of such races of African-American and Hispanic-American are deliberately targeted." (Compl. ¶ 21) (all emphasis in original). This bare recitation of the elements coupled with a conclusory allegation of widespread conspiracy involving discrimination against racial minorities is, of course, insufficient to state a claim for violations under Sections 1981 and 1982. The Complaint simply does not allege any facts that would support an inference that Defendants discriminated against Plaintiff on the basis of his race or national origin. Indeed, Plaintiff fails to plead facts demonstrating the existence of the conspiracy alleged, much less that Defendants had any involvement or that the alleged conspiracy had *anything* to do with the actions underlying this case. Accordingly, Plaintiff's Section 1981 and 1982 claims must be dismissed.

### B. Conspiracy with Racial Animus

Plaintiff next brings a claim for "conspiracy with racial animus." (Compl. ¶¶ 63–64.) Although Plaintiff does not specify the statutory basis for such a claim, construing his claims liberally, the Court interprets Plaintiff to be alleging a violation of 42 U.S.C. § 1985(3). The elements of a Section 1985(3) claim are:

> (1) a conspiracy . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; [and (2)] an act in furtherance of the conspiracy . . . whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian*, 7 F.3d at 1087. Additionally, "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* at 1088 (quoting *United Bd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).

As addressed above, Plaintiff's conclusory allegations that Defendants are involved in some conspiracy are wholly devoid of any facts supporting the actual existence of a conspiracy or that the alleged conspiracy injured him in any way or caused BML to discriminate against him on the basis of his race or national origin. Moreover, Plaintiff's claims that "[t]he conduct of the defendant was motivated by racial animus" that "was clearly expressed by the acts, inaction, behavior, racial epithets and ethnically insulting remarks, and offensive touching" are nonsensical, as he pleads no facts whatsoever to support such "clear expression," nor does he connect any of these conclusory assertions to a purported credit scheme conspiracy. (Compl. ¶¶ 99–100.) Indeed, the harms he alleges seem to be more appropriately made against law enforcement officials. (Compl. ¶ 67.) Accordingly, Plaintiff's "conspiracy with racial animus" claim — construed as a Section 1985(3) claim — must also be dismissed.

## C. State Law Claims

Plaintiff also alleges state law claims against Defendants for abuse of process, intentional infliction of emotional distress, fraudulent concealment, and negligence. Federal district courts have supplemental jurisdiction over state-law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, if a federal district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over the related state-law claims. 28 U.S.C. § 1367(c)(3). In exercising such discretion, district courts must balance the "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."). Accordingly, in the present case, the Court declines to exercise supplemental jurisdiction over Plaintiff's four state-law claims after having dismissed his federal claims.

Nevertheless, it appears that the Court has jurisdiction over Plaintiff's state law claims on the basis of diversity of citizenship between the parties. 28 U.S.C. § 1332(a). A corporation is a citizen of the state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is "best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). This place can be thought of as the corporation's "nerve center," and "in practice it should normally be the place where the corporation maintains its headquarters." *Id.* In addition to the requirement of complete diversity, there is an amount in controversy requirement of $75,000. 28 U.S.C. § 1332(a). A party invoking the jurisdiction of the federal court has "the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994) (quoting *Moore v. Retit*, 511 F.2d 1004, 1006 (2d Cir.1975)). This burden is "hardly onerous," because the Second Circuit "recognize[s] 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs.*, Inc., 166 F.3d 59, 63 (2d Cir. 1999)).

7

While Plaintiff failed to plead that this Court has jurisdiction due to diversity of citizenship under 28 U.S.C. § 1332, it is apparent that complete diversity exists between Plaintiff and Defendants.[3] In the Complaint, Plaintiff claims that he is a citizen of New York. (Compl. ¶ 3.) PayPal is incorporated in Delaware and its principal place of business is in California. *See* PayPal Holdings, Inc., Current Report (Form 8-K) (July 17, 2015). BML is also incorporated in Delaware, *see* Entity Details, State of Delaware Department of State: Division of Corporations, https://delecorp.delaware.gov/tin/controller (last visited July 24, 2015), and its principal place of business is in Maryland, *see* Terms and Conditions of the PayPal Credit Payment System, PayPal Credit, https://www.securecheckout.billmelater.com/paycapture-content/fetch?hash=9922884A&content=/bmlweb/bmlwebtnc.html (last visited July 24, 2015). Additionally, Plaintiff seeks damages in excess of the statutory amount. Thus, it is appropriate for the Court to exercise jurisdiction. However, as discussed below, each of Plaintiff's state-law claims fails on the merits.

1. Abuse of Process

Plaintiff's first state law claim is for abuse of process. Generally, "abuse of process may be defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process." *Bd. of Ed. of Farmington Union Free Sch. Dist. v. Farmington Classroom Teachers Ass'n*, 38 N.Y.2d 397, 400 (1975). More specifically, in New York:

> [A] party seeking to recover for abuse of process must show: (1) that defendant initiated regularly issued process, compelling the performance or forbearance of some prescribed act; (2) that defendant acted with a purpose to do harm without

---

[3] As discussed previously, the Court may take judicial notice of facts that are not subject to reasonable dispute and can accurately and readily be confirmed by accessing a corporate website. *Magnoni*, 483 F. App'x at 616. The Second Circuit has also held it proper for district courts to consider facts contained within SEC filings, *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 168 F. App'x 474, 476 (2d Cir. 2006), as well as within public filings more generally, *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003).

social or economic justification; and (3) that defendant sought some advantage or detriment lying outside the legitimate ends of the process.

*Levitin v. Miller*, No. 92-cv-0520 (KMW), 1994 WL 376078, at *5 (S.D.N.Y. July 15, 1994). Here, Plaintiff has not alleged that Defendants have initiated a lawsuit to collect on the debt incurred by Plaintiff. Indeed, Plaintiff has not alleged that Defendants have commenced *any* civil or criminal proceedings against him or even that they sent his information to a collection agency, let alone that they did so for illegitimate reasons. Accordingly, because his allegations that Defendants sent bills to him and called him are clearly insufficient to state a claim for abuse of process, this claim must also be dismissed.

### 2. Intentional Infliction of Emotional Distress

Plaintiff next asserts a claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). This test is "rigorous" and "difficult to satisfy." *Id.* at 122 (citation and internal quotation marks omitted). "In practice, courts [tend] to focus on the outrageousness element, [which is the element] most susceptible to determination as a matter of law." *Id.* at 121. Thus, unless the conduct alleged is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious [] and utterly intolerable in a civilized community," a claim for intentional infliction of emotional distress will not lie. *Id.* at 122 (citations and internal quotation marks omitted).

The conduct alleged by Plaintiff does not come close to meeting this high threshold. Plaintiff claims Defendants "exhibited extreme, outrageous and reckless conduct by falsely reporting falsely [sic] architecting, planning, documenting bills paid by its [sic] on the behalf of

9

the plaintiff." (Compl. ¶ 40.) The assertion that Defendants falsified documents is entirely conclusory and without any factual basis. Furthermore, as a matter of law, it cannot be said that granting credit, billing for purchases, and contacting a purchaser regarding the payment of those bills are sufficiently extreme or outrageous to satisfy a claim for intentional infliction of emotional distress. *See Conboy v. AT&T Corp.*, 241 F.3d 242, 258–59 (2d Cir. 2001) ("Plaintiffs were not physically threatened, verbally abused, or publicly humiliated . . . They were only harassed with numerous telephone calls from debt collectors. This conduct is not so outrageous as to 'go beyond all possible bounds of decency.'" (citation omitted)). Additionally, even if Defendants discriminated against Plaintiff on the basis of his race or national origin, that discrimination, without more, is not sufficient to support an intentional infliction of emotional distress claim. *See Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (rejecting claim for intentional infliction of emotional distress based on racial discrimination alone); *see also Jenkins v. Collins Bldg. Servs., Inc.*, No. 10-cv-6305 (AKH), 2013 WL 8112381, at *7 (S.D.N.Y. Oct. 17, 2013) ("[O]vert acts of discrimination have generally not been found to rise to the level of intentional infliction of emotional distress." (internal quotation marks omitted)). Accordingly, Plaintiff's intentional infliction of emotional distress claim must be dismissed.

### 3. Fraudulent Concealment

Plaintiff next asserts a claim under New York State law for fraudulent concealment. In order to state a claim for fraudulent concealment, "the complaint must allege [1] that the defendant made a material misrepresentation of fact; [2] that the misrepresentation was made intentionally in order to defraud or mislead the plaintiff; [3] that the plaintiff reasonably relied on the misrepresentation; and [4] that the plaintiff suffered damage as a result of its reliance on the defendant's misrepresentation." *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 376 (N.Y. App. Div. 2003). The claim must also include "an allegation that the defendant

had a duty to disclose material information and that it failed to do so." *Id*. Moreover, because this is a claim based on fraud, parties are required to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The Complaint fails to meet the heightened pleading standard required by Rule 9(b). Instead, Plaintiff simply offers conclusory assertions that PayPal and BML concealed their relationship and that Plaintiff was somehow damaged by this concealment. Assuming, *arguendo*, that Defendants had concealed their relationship, Plaintiff in any event fails to explain how he was damaged by his reliance on such a misrepresentation. Even though Plaintiff claims that, due to the concealment of the relationship, his credit was destroyed and he has experienced "medical/psychiatric" issues (Compl. ¶¶ 29, 31), he fails to draw any connection between his purported financial and health issues and the alleged hidden relationship. Regardless of whether or not the Defendants had a relationship, Plaintiff presumably would have been obligated to pay for his purchases in any event. Accordingly, Plaintiff's fraudulent concealment claim must be dismissed.

4. Negligence

Finally, Plaintiff asserts a claim for negligence. While it is not entirely clear what the basis for this claim is, construed liberally, Plaintiff appears to allege that Defendants negligently hired, and then negligently failed to train and monitor, employees. Although employers can, in certain instances, be held liable for negligent training and supervision of an employee, in order for such a claim to succeed, a plaintiff must demonstrate "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury . . . and that the allegedly deficient supervision or training was a proximate cause of [the plaintiff's] injury." *Hicks ex rel. Nolette v. Berkshire Farm Ctr. & Servs. for Youth*, 123 A.D.3d 1319, 1320 (N.Y. App. Div. 2014) (citations and internal quotation marks omitted).

11

Plaintiff seems to allege that Defendants knew or should have known about their employees' propensity for the unlawful conduct that caused his injury, and that had Defendants intervened, the injury would have been avoided. However, this claim once again fails to rise above the level of speculation. Plaintiff provides no factual basis for the employees' alleged propensities, nor does he specify what conduct has caused his injuries. Moreover, as set forth above, Plaintiff does not specifically allege any unlawful underlying conduct in the first place. Thus, Plaintiff's conclusory allegations do not support a plausible inference of any unlawful conduct, any injury, *or* any causation between Defendant's hiring practices and any purported injury. Plaintiff inexplicably claims Defendants' actions resulted in "false arrest, false imprisonment, malicious prosecution, [and] intentional infliction of emotional distress," all things wholly unrelated to a credit balance and, in any event, entirely unsupported by any factual allegations in the Complaint. (Compl. ¶ 48.) Accordingly, Plaintiff's negligence claim must likewise be dismissed.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry number 13 and to close this case.

SO ORDERED.

Dated: July 28, 2015
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE